Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law, Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>JOHN DOE, )<br><br>Defendant. )<br>_____ ) | **No. C-11-05634 PJH**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAUSE WHY SETH ABRAHAMS AND STEVEN YUEN SHOULD NOT BE FOUND IN CONTEMPT OF COURT FOR THEIR WILLFUL DISOBEDIENCE OF A COURT ORDER; MOTION TO COMPEL**<br><br>Hearing Date:  April 11, 2012<br>Time:  9:00 a.m.<br>Judge:  Honorable Phyllis J. Hamilton |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAUSE WHY SETH ABRAHAMS AND STEVEN YUEN SHOULD NOT BE FOUND IN CONTEMPT OF COURT FOR THEIR WILLFUL DISOBEDIENCE OF A COURT ORDER; MOTION TO COMPEL**

PLEASE TAKE NOTICE that on April 11, 2012 at 9:00 a.m., or as soon as the matter can be heard, in the courtroom of the Honorable District Court Judge Phyllis J. Hamilton, located at the Oakland Federal Courthouse, Courtroom 3 – 3rd Floor, 1301 Clay Street, Oakland, California 94612, Plaintiff Hard Drive Productions, Inc. ("Plaintiff") will, and hereby does, move for an order to show cause why Seth Abrahams and Steven Yuen in should not be found in contempt of Court for willful disobedience of a court order, and to compel Mr. Abrahams' deposition discovery by a date certain.

**INTRODUCTION**

By this motion, Plaintiff, by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP"), Rules 37(b)(2)(A)(vii) and 45(e), and 18 USC § 401(1), hereby moves this Court for an order for an order to show cause why deponent Seth Abrahams, and his attorney, Steven Yuen, should not be found in civil and/or criminal contempt of this Court for their willful disregard of a Court-authorized deposition subpoena served on Seth Abrahams for his deposition that was scheduled to take place on March 2, 2012, and his willful failure to attend that deposition on advice of counsel. Plaintiff prays for, among other things, an award of reasonable fees and costs to compensate it for the failure of Seth Abrahams and Steven Yuen to attend a deposition. Further, Plaintiff requests that the Court declare a date certain within this month on which the deposition of Seth Abrahams shall be taken.

**BACKGROUND**

On October 19, 2011, counsel for Plaintiff, Brett L. Gibbs (hereinafter "Plaintiff's Counsel") sent an email and accompanying letters to Mr. Michael Berch, former counsel for Mr. Abrahams which, among other things, notified him that his client's Internet Protocol ("IP") address had been observed by Plaintiff's agents in a BitTorrent swarm downloading and uploading Plaintiff's copyrighted video, requested that his client agree to informal discovery before bringing a lawsuit naming his client as the account holder of the infringing IP address, and reached out to Mr. Berch in order to start the dialogue between the parties in attempts to avoid litigation. (*See* Declaration of Brett L. Gibbs Supporting Plaintiff's Motions ["Gibbs Decl."] at ¶ 2.) That same day, Plaintiff's Counsel left a voice message on Mr. Berch's answering machine. (Gibbs Decl. at ¶ 3.) After not hearing back from Mr. Berch, on October 21, 2011, Plaintiff's Counsel called and left another voice message with Mr. Berch again warning him that this case would be initiated if Plaintiff's Counsel did not hear from him. (Gibbs Decl. at ¶ 4.) Plaintiff's Counsel never received a telephone call,

email, letter, or any other attempt to communicate from Mr. Berch. (Gibbs Decl. at ¶ 4.) On November 18, 2011, mere days before filing of this case, Plaintiff's Counsel again tried to contact Mr. Berch via the telephone to no avail. (Gibbs Decl. at ¶ 5.)  Due to this lack of communication, on November 21, 2011, Plaintiff brought this suit to identify the infringer in this case, and named in its text Mr. Seth Abrahams as the IP account holder whose IP address was used to unlawfully download and upload Plaintiff's copyrighted video.  (ECF No. 1.)

On December 5, 2011, Plaintiff's Counsel again tried to contact Mr. Berch to meet and confer with him regarding this matter with his client *vis-a-vis* informal discovery, thus avoiding burdening this Court with its involvement.  (Gibbs Decl. at ¶ 6.)  Again, Mr. Berch failed to even respond to Plaintiff's Counsel's request. (Gibbs Decl. at ¶ 6.)  As a result, Plaintiff's Counsel filed an *Ex Parte* Application for Leave to Take Discovery to Identify John Doe. (ECF No. 9.)  On February 13, 2012, the Court issued its Order Granting Plaintiff's Application for Leave to Take Expedited Discovery to Identify John Doe ("February 13 Order").  (ECF No. 10.)

On February 14, 2012, Plaintiff's Counsel issued an email to Mr. Berch with a copy of the Court's February 13 Order, and instructed him that, if Plaintiff's Counsel did not hear back from him by Wednesday, February 15, 2012, "and/or we can't work out a time/date that is mutually agreeable by that time, I will simply schedule a time/date that works best for my schedule.  Considering your failure to communicate in relation to this case, this deadline is firm." (Gibbs Decl. at ¶ 7.)  Once again, Mr. Berch simply failed to respond. (Gibbs Decl. at ¶ 7.) After that timeline expired, Plaintiff's Counsel scheduled the deposition, scheduled the attendance of a deposition officer, and had Mr. Abrahams personally served with the deposition subpoena (hereinafter "February 19 Deposition Subpoena"). (Gibbs Decl. at ¶ 8.)

On February 27, 2012, thirteen days after contacting Mr. Berch with a copy of the Court's February 13 Order, Mr. Berch finally—and for the first time—responded to Plaintiff's Counsel's

email by stating that, "My client is not available on March 2, 2012 to attend his deposition." (Gibbs Decl. at ¶ 8.)  That email was Mr. Berch's *only* contact with Plaintiff's Counsel ever.  On February 28, 2012, Plaintiff's Counsel responded to Mr. Berch's email and attempted to meet and confer with Mr. Berch on possibly re-scheduling the deposition under certain terms—i.e. compensation for expenses Plaintiff had already committed to the deposition. (Gibbs Decl. at ¶ 9.) Yet again, Mr. Berch simply failed to even issue a reply. (Gibbs Decl. at ¶ 9.)

On February 29, 2012, Plaintiff's Counsel received a letter from a Mr. Steven Yuen stating that he had recently been retained by Mr. Seth Abrahams as his attorney, and that he, Mr. Steven Yuen, (i.e. not Mr. Abrahams, as previously alleged by Mr. Berch) would not be available for the day of Mr. Abrahams' deposition on March 2, 2012, "due to a calendar conflict."  (Gibbs Decl. at ¶ 10.)  Mr. Yuen never elaborated on what the alleged "calendar conflict" was. (Gibbs Decl. at ¶ 10.) The tone of the February 29, 2012 letter from Mr. Yuen was very aggressive. (Gibbs Decl. at ¶ 11.) While never saying that his client, Mr. Abrahams, would be unable to attend the deposition, Mr. Yuen instead ordered that, "Mr. Abrahams's deposition **is not proceeding on March 2, 2012**." (Gibbs Decl. at ¶ 11) (emphasis in original).  Mr. Yuen never explained how his "calendar conflict" prevented his client from attending the deposition. (Gibbs Decl. at ¶ 11)

In his February 29, 2012 letter, Mr. Yuen also informed Plaintiff's Counsel of a separate declaratory judgment case that was filed by Mr. Abrahams against Plaintiff.  In filing that separate case—3:12-cv-1006 (JCS)—Mr. Yuen, as he has done in another case involving Plaintiff, appears to be further attempting to delay the deposition in this matter because, as he claims, "as the court is very likely to consider these cases related…. it [would] be burdensome for my client to be deposed once in your client's case and once in his case…." (Gibbs Decl. at ¶ 12.)  By creating his own dilemma, Mr. Yuen attempts to hijack Plaintiff's case, and tries to gain control over the deposition of his client at the expense of Plaintiff and the Court.  (Gibbs Decl. at ¶ 12.)

On February 29, 2012, Plaintiff's Counsel sent an email response to Mr. Yuen. (Gibbs Decl. at ¶ 13.)  That email clearly stated that the deposition of Mr. Abrahams "will proceed as planned." (Gibbs Decl. at ¶ 13.)  Again, Plaintiff's Counsel attempted to meet and confer with Mr. Yuen on possibly re-scheduling the deposition under the same terms presented to Mr. Berch.  Mr. Yeun rejected Plaintiff's Counsel's attempts. (Gibbs Decl. at ¶ 13.)

In that February 29, 2012 email, Plaintiff's Counsel suggested an alternative plan, and gave a reason for not re-scheduling the deposition without a mutually-agreeable understanding: "If your client would like to reschedule per my offer, see my previous email to Mr. Berch.  While you claim to not be available Friday, perhaps a member of you firm, or Mr. Abrahams' former counsel, can attend the deposition.  Either way, it does not matter to our client just as long as your client is present at the time and date required.  Your unavailability cannot be accommodated considering the extremely late notice, and the funds already committed." (Gibbs Decl. at ¶ 14.)

Plaintiff's Counsel's email also gave Mr. Yuen notice of the consequences his client's failure to attend by stating, "If your client fails to attend Friday's deposition, we will file contempt proceedings and ask the court for sanctions."  (Gibbs Decl. at ¶ 15.)

Several emails were sent back and forth between counsel attempting to work out the issues. (Gibbs Decl. at ¶ 16.)  Obviously, a compromise was never achieved. (Gibbs Decl. at ¶ 16.)

In an email on March 1, 2012, Mr. Yuen stated that, "Given your client's insistence to proceed with a deposition when I am unavailable, I have no choice but to proceed with the protective order." (Gibbs Decl. at ¶ 17.)  Again, Mr. Yuen never elaborated on the reason for his alleged "unavailab[ility]."  (Gibbs Decl. at ¶ 17.)  Mr. Yuen did, however, admit that Mr. Abrahams had "decided to retain" him on February 28, 2012, and that Mr. Yuen was fully aware of the conflict at that time. (Gibbs Decl. at ¶ 17.)   Despite his awareness, he failed to alert Plaintiff or Plaintiff's Counsel on that date. (Gibbs Decl. at ¶ 17.)  Instead, according to Mr. Yuen's emailed statement, he

spent his time drafting and filing Mr. Abrahams' complaint in Case No. 3:12-cv-1006 (JCS). (Gibbs Decl. at ¶ 17.)

The last correspondence between Plaintiff's Counsel and Mr. Yuen prior to the deposition was an email sent by Plaintiff's Counsel on March 1, 2012, at 5:12 p.m. stating the following: "As I stated, I will be attending the deposition tomorrow. All I can say is that I hope your client will be there as scheduled.  If not, please make sure he is on notice that our client will bring contempt proceedings against him." (Gibbs Decl. at ¶ 18.)  Mr. Yuen did not respond to Plaintiff's Counsel that day. (Gibbs Decl. at ¶ 18.)

Instead, on March 1, 2012, at approximately 6:30 p.m., Mr. Yuen filed an arguably frivolous Motion for a Protective Order. (ECF No. 16.)  That motion is still pending.

With the Motion for a Protective Order still pending as of March 2, 2012, Plaintiff's Counsel proceeded with the scheduled deposition of Seth Abrahams. (Gibbs Decl. at ¶ 19.) While the Deposition Officer, Paola Williams (hereinafter "Deposition Officer Williams"), and Plaintiff's Counsel were present and ready for the scheduled deposition on May 2, 2012, neither Mr. Abrahams nor Mr. Yuen—nor anyone from his firm for that matter—attended. (Gibbs Decl. at ¶ 19; *see also* Affirmation by Notary Public Acting as Deposition Officer ("Williams Affirm.") at ¶ 1.)

On March 2, 2012, at 9:37 a.m., Plaintiff's Counsel sent Mr. Yuen the following email from his mobile device: "Mr. Yuen, I am sitting in the Mill Valley Golf Clubhouse 267 Buena Vista Avenue, Mill Valley, California 94941 with Paola Williams, Deposition Officer, waiting to start the Deposition of Seth Abrahams which was scheduled for this morning at 8:30 a.m. We have been waiting for an hour. Your client has failed to show up. As such, we are unable to take the deposition. Please let me know if you and your client are simply running late and plan [*sic*] to attend, or whether your client is deliberately avoiding the Court-authorized deposition. If it is the latter, please note that we are going to bring contempt charges against your client.  His failure to attend this noticed

deposition is delaying us from ultimately naming a defendant in this case. Please note that the Court will not be pleased with this deliberate violation.  I will call your office to see if I can reach you." (Gibbs Decl. at ¶ 20.)  Mr. Yuen did not respond to that email. (Gibbs Decl. at ¶ 20.)

At about 10:00 am on March 2, 2012, Plaintiff's Counsel called the office of Murphy, Pearson, Bradley and Feeney, and asked the firm's secretary if he could speak with Mr. Steven Yuen, counsel for Mr. Seth Abrahams.  (Gibbs Decl. at ¶ 21.)  The secretary put Plaintiff's Counsel on hold, and then came back on the line saying that Mr. Yuen was out, and asked if Plaintiff Counsel would like to leave a message on Mr. Yuen's voice mail. (Gibbs Decl. at ¶ 21.)   Plaintiff's Counsel replied that he was waiting at a deposition for Mr. Yuen's client's attendance, and the secretary transferred Plaintiff's Counsel to Mr. Yuen's personal secretary, Shannon. (Gibbs Decl. at ¶ 21.)

Plaintiff's Counsel spoke with Shannon about being at the deposition location for the deposition of Seth Abrahams, and about why both Mr. Yuen and his client were not present. (Gibbs Decl. at ¶ 22.)  Plaintiff's Counsel asked whether she knew if Mr. Yuen intended to appear at the deposition with his client.  She was said that he was expected to arrive at work that morning, but had not arrived yet. (Gibbs Decl. at ¶ 22.)   Plaintiff's Counsel then asked his personal secretary, Shannon, to look at his schedule and to tell him whether there were any appointments on Mr. Yuen's schedule for that day, or whether his "schedule [appeared] open." (Gibbs Decl. at ¶ 22.)   She checked said she was looking at his schedule, and she said that it was "open for the entire day" [paraphrasing]. (Gibbs Decl. at ¶ 22.)  Further, she said that she would contact Mr. Yuen via his cell phone, and get back to Plaintiff's Counsel. (Gibbs Decl. at ¶ 22.)

On or around 10:25 a.m., Deposition Officer Williams called the office of Murphy, Pearson, Bradley and Feeney, and asked the firm's secretary if she could speak with Mr. Steven Yuen, counsel for Mr. Seth Abrahams. (Williams Affirm. at ¶ 2.)  The secretary put her on hold, and then came back on the line saying that Mr. Yuen was out, and asked if Deposition Officer Williams

would like to leave a message on his voice mail instead. (Williams Affirm. at ¶ 2.)  Deposition Officer Williams then asked to be transferred to his personal secretary, Shannon. (Williams Affirm. at ¶ 2.)

When she was transferred to Shannon, Deposition Officer Williams spoke with Shannon about being at the Mill Valley Club House for the Deposition of Seth Abrahams, and about Mr. Yuen not being there. (Williams Affirm. at ¶ 3.) Deposition Officer Williams asked whether Shannon knew if Mr. Yuen was going to show up at the deposition with his client. (Williams Affirm. at ¶ 3.) Shannon was said that he had not arrived for work yet that morning, and she did not know whether or not he was planning to attend the deposition scheduled for March 2, 2012 at 8:30 a.m. (Williams Affirm. at ¶ 3.)

Deposition Officer Williams asked Mr. Yuen's personal secretary, Shannon, to look at his schedule and tell Deposition Officer Williams whether there were any appointments on his schedule for that day. (Williams Affirm. at ¶ 4.) Shannon again checked his schedule, and said that he had no appointments on his schedule for the entire day. (Williams Affirm. at ¶ 4.)

Plaintiff's Counsel never heard back from Mr. Yuen, or anyone else from his firm, about his and his client's absence. (Gibbs Decl. at ¶ 23.)  On or around 11:15 a.m., Plaintiff's Counsel and Deposition Officer Williams left the designated-deposition site. (Gibbs Decl. at ¶ 23; Williams Affirm. at ¶ 5.)  All in all, the deposition of Seth Abrahams did not take place in light of the absence of Mr. Abrahams. (Gibbs Decl. at ¶ 24; Williams Affirm. at ¶ 6.)

Upon returning to his office, Plaintiff's Counsel emailed Mr. Yuen in an attempt to meet and confer regarding his and his client's failure to attend the deposition that day. (Gibbs Decl. at ¶ 25.) In that meet and confer, Plaintiff's Counsel offered to not pursue any contempt proceedings in exchange for reasonable compensation of the Plaintiff's losses in light of Mr. Abrahams' failure to appear. (Gibbs Decl. at ¶ 25.)  Mr. Yuen responded to Plaintiff's Counsel stating, among other

things, "Any fees and costs which you incurred is due to your own insistence to proceed with the unilaterally noticed deposition despite this notice two days ago, and my attempts to reset this deposition." (Gibbs Decl. at ¶ 26.)

A meet and confer telephone conversation ensued where Mr. Yuen said that the two-day notice of his alleged "calendar conflict" entirely justified his client's non-appearance, and that he and his client would not compensate Plaintiff for *any* of the expenses. (Gibbs Decl. at ¶ 27.)  Further, he actually questioned whether Plaintiff's Attorney and/or Deposition Officer Williams had even shown up for the deposition as they had stated. (Gibbs Decl. at ¶ 27.)  Proposals from both sides concerning future discovery did not get anywhere, and no date was set for a new deposition in light of Mr. Yuen's stance that only the one single Court-authorized deposition of Mr. Abrahams should be taken for both this case and Case No. 3:11-cv-1006 JCS, thus not allowing Plaintiff to depose Mr. Abrahams again at any further stage in either case. (Gibbs Decl. at ¶ 27.)  As of now, there is no agreement by each side as to how and when to take the deposition of this Mr. Abrahams in this case. (Gibbs Decl. at ¶ 27.)

Ultimately, considering Mr. Yuen and Mr. Abrahams' unreasonable positions, the attempt to meet and confer to resolve these issues failed. (Gibbs Decl. at ¶ 27.)  At this point, Mr. Yuen is stubbornly sticking to his one deposition offer, and does not appear willing to work with Plaintiff's Counsel to schedule the Court-authorized deposition in this case without this first being agreed upon. (Gibbs Decl. at ¶ 28.)  Plaintiff's Counsel is concerned that, considering the occurrences of March 2, 2012, merely setting a deposition date in the future will result in the same refusal to attend by Mr. Yuen and Mr. Abrahams.  In light of the above, Plaintiff now brings these Motions before the Court.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ANALYSIS

## *1. Contempt is Appropriate Against Both Mr. Seth Abrahams and Mr. Steven Yuen.*

Under Rule 45(a)(3), "An attorney may … issue and sign a subpoena as an officer of: (A) a court in which the attorney is authorized to practice…"  That subpoena can be directed at a non-party to take that individual's deposition.  FRCP 45.  If the basic governing provisions are met, the named deponent *must* appear as specified on the properly noticed deposition subpoena.  *See* FRCP 30, 37, and 45.  "The failure of the noticing party to cooperate or perform its discovery obligations does *not* justify failing to appear for a properly noticed deposition." Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial, California and 9th Circuit Editions* at ¶ 11:1626.1 (2011) (emphasis added) (citing references omitted).  Further, "Failure to appear is *not* excused by the fact that a motion for protective order was pending on the date set for appearance." Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶ 11:1627.  As stated by the Ninth Circuit, "[I]t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." *Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 269 (9th Cir. 1964) (further finding that "[a]ny such rule [allowing for unilateral cancellation] would be an intolerable clog upon the discovery process… Otherwise, as this case shows, a proposed deponent, by merely filing motions under Rule 30(b), could evade giving his deposition indefinitely."); *see also F.A.A. v. Landy*, 705 F.2d 624, 634 (2d Cir. 1983) ("It is clear, however, that it is not the filing of such a motion that stays the deposition, but rather a court order."); Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶ 11:1166.

"The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  FRCP 45(e).  "Contempt proceedings are instituted by the issuance of an Order to Show Cause ("OSC") why a contempt citation should not issue and a notice of a date for the hearing." *Alcalde v. NAC Real Estate Investments &* Assignments, Inc., 580 F.Supp.2d 969, 971 (N.D. Cal. 2008) (citing Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶

10

11:2316.)  "A civil contempt proceeding is a 'trial' within the meaning of Rule 43(a).  Thus, a formal hearing with live testimony is required… [i].e., the issues may *not* be tried solely on affidavits."  *See* Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶ 11:2317; *see also, e.g., Pennwalt Corp. v. Durland-Wayland, Inc.* 708 F.2d 492, 495 (9th Cir. 1983).  "In a civil contempt action, '[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.'" *Federal Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (quoting *Federal Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).  "The imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983).

Plaintiff personally served the February 19 Deposition Subpoena on Mr. Abrahams. (See ECF No. 11, Declaration of Service.) Beginning at that moment, regardless of his representation, Mr. Abrahams was fully aware of his upcoming March 2, 2012 deposition.  His failure to appear is inexcusable.  Further, as an officer of this Court, Mr. Yuen should have been fully aware of Mr. Abrahams' obligations under the Federal Rules.  His and his client's blatant disregard of their duties before this Court should not be dismissed.

While Mr. Abrahams filed a motion for a protective order on the evening of March 1, 2012, that protective order did not excuse Mr. Abrahams' attendance at the deposition.  As of March 2, 2012—the date of the deposition—that motion for the protective order had not been resolved, and still remains unresolved.  As such, it is *not* an excuse to refuse to attend a deposition. *See, e.g., Pioche Mines Consolidated, Inc.,* 333 F.2d at 269, *F.A.A.*, 705 F.2d at 634; Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶¶ 11:1166, 1627.  As the Ninth Circuit in *Pioche* noted, "[a]ny such rule [allowing for unilateral cancellation] would be an intolerable clog upon the discovery process…

1   Otherwise, as this case shows, a proposed deponent, by merely filing motions under Rule 30(b),

2   could evade giving his deposition indefinitely." 333 F.2d at 269.

3        Further, Mr. Yuen's 2-day notice stating, "Mr. Abrahams's deposition **is not proceeding on**

4   **March 2, 2012**," is likewise ineffective in relieving Mr. Abrahams of his obligations.  First, the

5   deposition was scheduled by Plaintiff in the previous weeks, and could not simply be canceled by

6   Mr. Yuen, especially on short notice.  Second, as the Court can understand, allowing Mr. Abrahams

7   to hire a new attorney that might have a "calendar conflict" and use that as the sole basis for Mr.

8   Abrahams' cancelation, creates an extremely slippery slope and a loophole for those who find a

9   court's order inconvenient.[1]

10

11       Lastly, Mr. Yuen's creation of an entirely new case is irrelevant to the expedited deposition

12  discovery in this case.  First, the deposition of Mr. Abrahams is intended to allow Plaintiff to take

13  discovery early in this case to ultimately allow Plaintiff to name and serve a defendant in this case.

14  Any discovery in Case No. 3:12-cv-1006 would not be expedited, and, frankly, would be used for an

15  entirely separate purpose.  Second, Mr. Yuen attempts to hijack Plaintiff's case should not be

16  permitted.  By initiating his second lawsuit, he is attempting to gain all control over the deposition of

17  his client at the expense of Plaintiff and the Court.  Ultimately, his goal, as he has already

18  demonstrated in this case and a virtually identical previous case against Plaintiff, is to subvert the

19  Court's order and extend the deposition out as long as possible.  Per the Court's February 13 Order

20  and the statements at the Case Management Conference on March 1, 2012, the Court would like this

21  case to proceed forward.  This case cannot proceed forward with Mr. Yuen throwing a proverbial

22

23

24

---

25  [1] The suspicious circumstances of Mr. Yuen's alleged "calendar conflict" raise further questions.  At first, counsel for
    Mr. Abrahams stated, "*My client* is not available on March 2, 2012 to attend his deposition." (Gibbs Decl. at ¶ 8.)  Then,
26  in his February 29, 2012, letter to Plaintiff's Counsel, Mr. Yuen stated, "*I* am unavailable on that date for [Mr.
    Abrahams'] deposition due to a calendar conflict."  Later, his personal secretary confirmed there was nothing on his
27  calendar—neither the deposition or another engagement.  To this day he has never given the specifics on his alleged
    "calrendar conflict." It is Plaintiff's concern that Mr. Yuen lied to Plaintiff, as well as this Court, in a desparate attempt
28  to prevent the deposition, and to justify his client's failure to attend the deposition.

wrench into the wheels of justice.  In order for Plaintiff to accommodate the Court's wishes, the Court must first issue the requested order to show cause, and demonstrate that its authority shall not be ignored.

Mr. Yuen was under the mistaken belief that he could unilaterally cancel Mr. Abrahams' deposition because of an undisclosed "calendar conflict."  His actions in this matter are in blatant disregard of the Federal Rules of Civil Procedure.  They not only obstruct Plaintiff's rights, but they also clearly insult the authority of the Court.  The Court needs to reestablish its authority in this case by issuing an Order to Show Cause why the Court should not hold Mr. Abrahams and Mr. Yuen in contempt for its actions.

### 2.  *Criminal Contempt is Applicable and Should be Considered Under the Circumstances.*

"To distinguish civil from criminal contempt, the focus of the inquiry is often 'not [upon] the fact of the punishment but rather its character and purpose.'" *Falstaff Brewing Corp.,* 702 F.2d at 778.  "'The primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court[,]' whereas '[c]ivil contempt is characterized by the court's desire to compel obedience to a court order, ... or to compensate the contemner's adversary for the injuries which result from the noncompliance.'" *Id.*

Criminal contempt is defined by an individual's intent.  "Willfulness is the essential element of criminal contempt, but not of civil contempt." Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶ 11:2463 (citing *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.* 893 F.2d 605, 612 (3rd Cir. 1990); *see also In re Grand Jury Proceedings,* 801 F.2d 1164 (9th Cir. 1986); *United States v. Metro. Disposal Corp.*, 798 F.2d 1273, 1274 (9th Cir. 1986); *Alcalde v. NAC Real Estate Investments*, 580 F.Supp.2d 969 (C.D. Cal. 2008) (ordering individuals to "Show Cuase why they should not be found in civil contempt or criminal contempt" based on willful failure to follow a court order).

It is undisputed that both Mr. Abrahams and Mr. Yuen knew about the March 2, 2012 deposition, and deliberately chose not to attend.  Mr. Yuen's February 29, 2012 letter, for instance, specifically referenced the date of the Mr. Abrahams' deposition.  There is no question that Mr. Abrahams' and Mr. Yuen's actions constituted willful avoidance of a Court order.  Their actions justify criminal contempt.

### 3.  The Court Should Grant Plaintiff's Motion to Compel.

In light of all the above, it is clear that Mr. Abrahams and Mr. Yuen do not respect Court-authorized deposition subpoenas issued by counsel pursuant to Rule 45(a)(3)(A).  Perhaps, their attitudes will change if the Court were to directly compel the deposition discovery.

Per FRCP Rule 37(a)(1), "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  *See also* Northern District of California Local Rule 37-1. "The burden is on the moving party to demonstrate actual and substantial prejudice from the denial of discovery." Schwarzer, et al., *Fed. Civil Pro. Before Trial* at ¶ 11:2379.1 (citing In re Sulfuric Acid Antitrust Litigation 231 F.R.D. 331, 333 (N.D. Ill. 2005).  Per FRCP Rule 37(a)(5)(A), "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

The facts recounted above make it abundantly clear that Plaintiff satisfies the standard for this Court to grant its motion to compel.  Plaintiff's Counsel has made numerous attempts to meet and confer with both sets of counsel for Mr. Abrahams, but, at this point, nothing has been resolved.

When Plaintiff set up a deposition, Mr. Abrahams and Mr. Yuen failed to attend.  Currently, it appears Mr. Yuen believes that he can get protective order from the Court, and, until then, is not open to set up a new deposition date.  Plaintiff, therefore, must turn to the Court to compel this already authorized discovery.

Further, this discovery is crucial to Plaintiff's ability to name and serve a defendant in this case.  It is the reason the Court authorized this discovery in the first place.  Without the deposition discovery, Plaintiff will have no ability to identify and/or serve a defendant in this case.  Not allowing for this discovery would be tantamount to dismissing Plaintiff's case.

The game that Mr. Yuen is playing should be discouraged.  But for his and his client's misconduct, Plaintiff would not have had to bring the foregoing motions.  The Court must realize that Mr. Yuen's tactics are not only hurting Plaintiff's case, but also hurting Plaintiff's wallet.  Under Rule 37(a)(5)(A), Plaintiff is entitled to reasonable costs and fees for moving to compel this discovery.  As laid out more thoroughly in the attached Declaration of Brett L. Gibbs, Plaintiff's costs and fees for its efforts in relation to the March 2, 2012 deposition, and drafting and filing the above motion to compel total $2,630. (Gibbs Decl. at ¶¶ 29-30.) This amount is entirely reasonable under the circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order to show cause why Seth Abrahams and Steven Yuen in should not be found in contempt of Court for willful disobedience of a court order, and further issue an order compelling Mr. Abrahams to submit to a deposition in this case by a date certain.

Also, Plaintiff requests that to the extent the Court believes a hearing on this motion is appropriate, that it schedule such hearing in this matter for a date sooner than April 11, 2012, that is convenient for the Court if available.

1   Respectfully Submitted,

2                                              PRENDA LAW INC.,

3   **DATED: March 6, 2012**

4                                   By:      ____/s/  Brett L. Gibbs, Esq._____

5
                                             Brett L. Gibbs, Esq. (SBN 251000)
6                                            Of Counsel for Prenda Law Inc.
                                             38 Miller Avenue, #263
7                                            Mill Valley, CA 94941
                                             blgibbs@wefightpiracy.com
8                                            *Attorney for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR OSC AND TO COMPEL                    No. C-11-05634 PJH

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that on March 6, 2012, all individuals of record who are deemed to

3

have consented to electronic service are being served a true and correct copy of the foregoing

document, and all attachments and related documents, using the Court's ECF system, in compliance

4

with Local Rule 5-6 and General Order 45.

5

6

/s/ Brett L. Gibbs_____

7

Brett L. Gibbs, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR OSC AND TO COMPEL                    No. C-11-05634 PJH