# EXHIBIT A

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel for Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE, ) <br> ) <br> Defendant. ) <br> ) | **No. C-11-05634 PJH** <br><br> **DECLARATION OF BRETT L. GIBBS SUPPORTING PLAINTIFF'S MOTIONS** |

**DECLARATION OF BRETT L. GIBBS**

I, Brett L. Gibbs, declare as follows:

1. I am an attorney at law licensed to practice in California, and admitted in the Northern District of California. My business address is 38 Miller Avenue, #263, Mill Valley, CA, 94941. I am counsel of record for Plaintiff in this matter.

2. On October 19, 2011, I sent an email and accompanying letters to Mr. Michael Berch, former counsel for Mr. Abrahams which, among other things, notified him that his client's Internet Protocol ("IP") address had been observed by Plaintiff's agents in a BitTorrent swarm downloading and uploading Plaintiff's copyrighted video, requested that his client agree to informal discovery

2

before bringing a lawsuit naming his client as the account holder of the infringing IP address, and reached out to Mr. Berch in order to start the dialogue between the parties in attempts to avoid litigation.

3. On October 19, 2011, I left a voice message on Mr. Berch's answering machine.

4. After not hearing back from Mr. Berch, on October 21, 2011, I called and left another voice message with Mr. Berch again warning him that this case would be initiated if I did not hear from him. I never received a telephone call, email, letter, or any other attempt to communicate from Mr. Berch.

5. On November 18, 2011, mere days before filing of this case, I again tried to contact Mr. Berch via the telephone to no avail.

6. On December 5, 2011, I again tried to contact Mr. Berch to meet and confer with him regarding this matter with his client *vis-a-vis* informal discovery, thus avoiding burdening this Court with its involvement. Again, Mr. Berch failed to even respond to my request.

7. On February 14, 2012, I issued an email to Mr. Berch with a copy of the Court's February 13 Order, and instructed him that, if I did not hear back from him by Wednesday, February 15, 2012, "and/or we can't work out a time/date that is mutually agreeable by that time, I will simply schedule a time/date that works best for my schedule. Considering your failure to communicate in relation to this case, this deadline is firm." Once again, Mr. Berch simply failed to respond.

8. After that timeline expired, I personally scheduled the deposition, scheduled the attendance of a deposition officer, and had Mr. Abrahams personally served with the deposition subpoena. Then, on February 27, 2012, thirteen days after contacting Mr. Berch with a copy of the Court's February 13 Order, Mr. Berch finally—and for the first time—responded to my email by stating that, "My client is not available on March 2, 2012 to attend his deposition." That email was Mr. Berch's *only* contact with me ever.

9. On February 28, 2012, I responded to Mr. Berch's email and attempted to meet and confer with Mr. Berch on possibly re-scheduling the deposition under certain terms—i.e. compensation for expenses Plaintiff had already committed to the deposition. Yet again, Mr. Berch simply failed to even issue a reply.

10. On February 29, 2012, I received a letter from a Mr. Steven Yuen stating that he had recently been retained by Mr. Seth Abrahams as his attorney, and that he, Mr. Steven Yuen, (i.e. not Mr. Abrahams, as previously alleged by Mr. Berch) would not be available for the day of Mr. Abrahams' deposition on March 2, 2012, "due to a calendar conflict." Mr. Yuen never elaborated on what the alleged "calendar conflict" was.

11. The tone of the February 29, 2012 letter from Mr. Yuen was very aggressive. While never saying that his client, Mr. Abrahams, would be unable to attend the deposition, Mr. Yuen instead ordered that, "Mr. Abrahams's deposition **is not proceeding on March 2, 2012**." Mr. Yuen never explained how his "calendar conflict" prevented his client from attending the deposition.

12. In his February 29, 2012 letter, Mr. Yuen also informed me of a separate declaratory judgment case that was filed by Mr. Abrahams against Plaintiff. In filing that separate case—3:12-cv-1006 (JCS)—Mr. Yuen, as he has done in another case involving Plaintiff, appears to be further attempting to delay the deposition in this matter because, as he claims, "as the court is very likely to consider these cases related…. it [would] be burdensome for my client to be deposed once in your client's case and once in his case…." By creating his own dilemma, Mr. Yuen attempts to hijack Plaintiff's case, and tries to gain control over the deposition of his client at the expense of Plaintiff and the Court.

13. On February 29, 2012, I sent an email response to Mr. Yuen. That email clearly stated that the deposition of Mr. Abrahams "will proceed as planned." Again, I attempted to meet and

confer with Mr. Yuen on possibly re-scheduling the deposition under the same terms presented to Mr. Berch. Mr. Yeun rejected my attempts.

14. In that February 29, 2012 email, I suggested an alternative plan, and gave a reason for not re-scheduling the deposition without a mutually-agreeable understanding: "If your client would like to reschedule per my offer, see my previous email to Mr. Berch. While you claim to not be available Friday, perhaps a member of you firm, or Mr. Abrahams' former counsel, can attend the deposition. Either way, it does not matter to our client just as long as your client is present at the time and date required. Your unavailability cannot be accommodated considering the extremely late notice, and the funds already committed."

15. My email also gave Mr. Yuen notice of the consequences his client's failure to attend by stating, "If your client fails to attend Friday's deposition, we will file contempt proceedings and ask the court for sanctions."

16. Several more emails were sent back and forth between counsel attempting to work out the issues. A compromise was never achieved.

17. In an email on March 1, 2012, Mr. Yuen stated that, "Given your client's insistence to proceed with a deposition when I am unavailable, I have no choice but to proceed with the protective order." Again, Mr. Yuen never elaborated on the reason for his alleged "unavailab[ility]." Mr. Yuen did, however, admit that Mr. Abrahams had "decided to retain" him on February 28, 2012, and it seemed that Mr. Yuen was fully aware of the conflict at that time. Despite his awareness, he failed to alert Plaintiff or me on that date. Instead, according to Mr. Yuen's emailed statement, he spent his time drafting and filing Mr. Abrahams' complaint in Case No. 3:12-cv-1006 (JCS).

18. The last correspondence between Mr. Yuen and I prior to the deposition was an email sent by me on March 1, 2012, at 5:12 p.m. stating the following: "As I stated, I will be attending the deposition tomorrow. All I can say is that I hope your client will be there as scheduled. If not, please

make sure he is on notice that our client will bring contempt proceedings against him." Mr. Yuen did not respond to my email that day.

19. With the Motion for a Protective Order still pending as of March 2, 2012, I proceeded with the scheduled deposition of Seth Abrahams. While the Deposition Officer, Paola Williams (hereinafter "Deposition Officer Williams"), and I were present and ready for the scheduled deposition on May 2, 2012, neither Mr. Abrahams nor Mr. Yuen—nor anyone from his firm for that matter—attended.

20. On March 2, 2012, at 9:37 a.m., I sent Mr. Yuen the following email from my mobile device: "Mr. Yuen, I am sitting in the Mill Valley Golf Clubhouse 267 Buena Vista Avenue, Mill Valley, California 94941 with Paola Williams, Deposition Officer, waiting to start the Deposition of Seth Abrahams which was scheduled for this morning at 8:30 a.m. We have been waiting for an hour. Your client has failed to show up. As such, we are unable to take the deposition. Please let me know if you and your client are simply running late and plan [*sic*] to attend, or whether your client is deliberately avoiding the Court-authorized deposition. If it is the latter, please note that we are going to bring contempt charges against your client.  His failure to attend this noticed deposition is delaying us from ultimately naming a defendant in this case. Please note that the Court will not be pleased with this deliberate violation.  I will call your office to see if I can reach you." Mr. Yuen did not respond to my email.

21. At about 10:00 am on March 2, 2012, I called the office of Murphy, Pearson, Bradley and Feeney, and asked the firm's secretary if he could speak with Mr. Steven Yuen, counsel for Mr. Seth Abrahams.  The secretary put me on hold, and then came back on the line saying that Mr. Yuen was out, and asked if I would like to leave a message on Mr. Yuen's voice mail.  I replied that I was waiting at a deposition for Mr. Yuen's client's attendance, and the secretary transferred me to Mr. Yuen's personal secretary, Shannon.

22.     I spoke with Shannon about being at the deposition location for the deposition of Seth Abrahams, and about why both Mr. Yuen and his client were not present. I asked whether she knew if Mr. Yuen intended to appear at the deposition with his client.  She was said that he was expected to arrive at work that morning, but had not arrived yet. I then asked his personal secretary, Shannon, to look at his schedule and to tell him whether there were any appointments on Mr. Yuen's schedule for that day, or whether his "schedule [appeared] open." She checked said she was looking at his schedule, and she said that it was "open for the entire day" [paraphrasing]. Further, she said that she would contact Mr. Yuen via his cell phone, and get back to me.

23.     I never heard back from Mr. Yuen, or anyone else from his firm, about his and his client's absence while at the deposition location.  On or around 11:15 a.m., Deposition Officer Williams and I left the designated-deposition site.

24.     The deposition of Seth Abrahams did not take place in light of the absence of Mr. Abrahams.

25.     Upon returning to my office, I emailed Mr. Yuen in an attempt to meet and confer regarding his and his client's failure to attend the deposition that day.  In that meet and confer, I offered to not pursue any contempt proceedings in exchange for reasonable compensation of the Plaintiff's losses in light of Mr. Abrahams' failure to appear.

26.     Mr. Yuen responded to me stating, among other things, "Any fees and costs which you incurred is due to your own insistence to proceed with the unilaterally noticed deposition despite this notice two days ago, and my attempts to reset this deposition."

27.     A meet and confer telephone conversation ensued where Mr. Yuen said that the two-day notice of his alleged "calendar conflict" entirely justified his client's non-appearance, and that he and his client would not compensate Plaintiff for *any* of the expenses.  Further, he actually questioned whether Deposition Officer Williams and/or I had even shown up for the deposition as

we had stated. Proposals from both sides concerning future discovery did not get anywhere, and no date was set for a new deposition in light of Mr. Yuen's stance that only the one single Court-authorized deposition of Mr. Abrahams should be taken for both this case and Case No. 3:11-cv-1006 JCS, thus not allowing Plaintiff to depose Mr. Abrahams again at any further stage in either case. As of now, there is no agreement by each side as to how and when to take the deposition of this Mr. Abrahams in this case.

28. Ultimately, considering Mr. Yuen and Mr. Abrahams' unreasonable positions, the attempt to meet and confer to resolve these issues failed. At this point, Mr. Yuen is stubbornly sticking to his one deposition offer, and does not appear willing to work with me to schedule the Court-authorized deposition in this case without this first being agreed upon.

29. Plaintiff incurred the following costs directly related to the March 2, 2012 deposition:

    a. Venue Cost – $80; and

    b. Deposition Officer Fee – $100.

30. I am Of Counsel to Prenda Law, Inc. As a 2007 graduate of University of California at Hastings, I have been a practicing law for 5.5 years, and have been practicing federal copyright litigation for the past year. As a federal litigator, I have filed tens of federal cases, appeared before federal courts for in numerous hearings, and filed hundreds (if not thousands) of documents in this and other federal courts. Prior to the past year, I was also involved in an array of litigation—both state and federal—and also worked for two District Court Judges in this District. I spent **7 hours** reading, researching, and writing the Motion to Compel in this case, and my related declaration. This does *not* account for the approximately 22.5 hours that I personally spent arranging for the March 2, 2012 deposition (~3.5), preparing for it (~4), setting it up and attending it (~4.5), and researching and drafting the Motion For Order to Show Cause Why Seth Abrahams and Steven Yuen Should Not Be Found in Contempt of Court For Their Willful Disobedience of a Court Order (~10.5). I believe

8

that the reasonable value of my services, considering the above, is **$350 per hour**. This would make the reasonable fee amount **$2,450** total for the above-described work.

      31.    I declare under penalty of perjury that the foregoing is true and correct based on my own personal knowledge, except for those matters stated on information and belief, and those matters I believe to be true. If called upon to testify, I can and will competently testify as set forth above.

**DATED: March 6, 2012**

By: \_\_\_\_/s/ Brett L. Gibbs,_____